Sealed
Public and unofficial staff access to this instrument are prohibited by court order.

United States Court
Southern District of Texas
FILED

NOV 24 2015

David J. Bradley, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | CRIMINAL NO. 15 CR 635 |
| § | |
| CHRISTIAN JAVIER § | |
| MALDONADO-BARILLAS § | |

## INFORMATION

THE UNITED STATES CHARGES:

### Introduction

At all times material to this information:

1.  Petroleos de Venezuela S.A. ("PDVSA") was the Venezuelan state-owned and state-controlled oil company. PDVSA and its subsidiaries were responsible for the exploration, production, refining, transportation, and trade in energy resources in Venezuela and provided funding for other operations of the Venezuelan government. PDVSA and its wholly-owned subsidiaries were "instrumentalities" of the Venezuelan government as that term is used in the Foreign Corrupt Practices Act ("FCPA"), Title 15, United States Code, Section 78dd-2(h)(2)(A).

2.  Defendant **CHRISTIAN JAVIER MALDONADO BARILLAS** ("Defendant **MALDONADO**"), a resident of Venezuela and later Fort Bend County, Texas, was employed by PDVSA or by wholly-owned subsidiaries or

affiliates thereof at all relevant times beginning in or around 2005. During that time, Defendant **MALDONADO** held a number of positions related to purchasing, including serving as a purchasing analyst for the PDVSA procurement subsidiary responsible for equipment purchases. Defendant **MALDONADO**'s job responsibilities included selecting companies for bidding panels, which allowed those companies to submit bids on individual PDVSA projects. Defendant **MALDONADO** served as the purchasing analyst in connection with the award of a series of contracts in 2010 to purchase power generation equipment worth over $700 million in response to an electrical emergency in Venezuela. Defendant **MALDONADO** was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

3. "BUSINESSMAN 1," an individual whose identity is known to the United States, was the owner of a number of U.S.-based energy companies, including several companies based in the Southern District of Texas, that supplied equipment and services to PDVSA, and a resident of Texas, and thus a "domestic concern" and an officer, director, employee, agent, and shareholder of a "domestic concern" as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1). One of the companies owned by BUSINESSMAN 1 and based in the Southern District of Texas was awarded one of the 2010 PDVSA

contracts in connection with the Venezuelan electrical emergency that was worth more than $200 million.

4. "BUSINESSMAN 2," an individual whose identity is known to the United States, was the owner of a number of other U.S.-based energy companies that supplied equipment and services to PDVSA, and a resident of the United States, and thus a "domestic concern" and an officer, director, employee, agent, and shareholder of a "domestic concern" as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1). BUSINESSMAN 1 and BUSINESSMAN 2 worked together on a number of PDVSA contracts and contract bids.

5. "ASSOCIATE 1" was an associate of BUSINESSMAN 1 and BUSINESSMAN 2 who assisted them in their business operations, including by establishing connections between BUSINESSMAN 1 and BUSINESSMAN 2 and foreign officials employed by PDVSA and its subsidiaries.

## COUNT ONE
### (18 U.S.C. § 371 – Conspiracy)

6. Beginning in at least 2009 and continuing through at least 2012, the defendant,

**CHRISTIAN JAVIER MALDONADO BARILLAS,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly conspire, confederate, and agree with others known and unknown to the United States, including BUSINESSMAN 1, BUSINESSMAN 2 and ASSOCIATE 1, to commit offenses against the United States, that is:

with the intent to promote the carrying on of specified unlawful activity, namely, bribery of a foreign official, a felony violation of the FCPA, Title 15, United States Code, Section 78dd-2, transport, transmit, or transfer funds from a place in the United States to a place outside the United States, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

## Purpose of the Conspiracy

7. The purpose of the conspiracy was for BUSINESSMAN 1, BUSINESSMAN 2, ASSOCIATE 1, and their co-conspirators to transfer funds through financial institutions in order to facilitate bribe payments to Defendant **MALDONADO**, in order to promote an illegal scheme by which BUSINESSMAN 1, BUSINESSMAN 2, and their cohorts would gain an improper advantage in obtaining and retaining lucrative energy contracts with PDVSA.

## Manner and Means of the Conspiracy

8. The manner and means by which Defendant **MALDONADO** and his co-conspirators sought to accomplish the purpose of the conspiracy included,

among other things, the following, while in the Southern District of Texas and elsewhere:

9. Defendant **MALDONADO**, BUSINESSMAN 1, BUSINESSMAN 2, and ASSOCIATE 1, together with others, agreed that, in exchange for Defendant **MALDONADO**'s assistance in helping BUSINESSMAN 1's and BUSINESSMAN 2's companies win and receive payment for PDVSA contracts, BUSINESSMAN 1 and BUSINESSMAN 2 would pay bribes to Defendant **MALDONADO**.

10. Defendant **MALDONADO**, BUSINESSMAN 1, BUSINESSMAN 2, and ASSOCIATE 1, together with others, further agreed that, in exchange for bribe payments, Defendant **MALDONADO** would provide BUSINESSMAN 1 and BUSINESSMAN 2 with inside information concerning the PDVSA bidding process, place BUSINESSMAN 1's and BUSINESSMAN 2's companies on the bidding panels for PDVSA projects, update and modify contract documents, including change orders to PDVSA contracts awarded to BUSINESSMAN 1's and BUSINESSMAN 2's companies, and give payment priority to projects involving BUSINESSMAN 1 and BUSINESSMAN 2.

11. Defendant **MALDONADO**, together with others, including BUSINESSMAN 1, BUSINESSMAN 2, and ASSOCIATE 1, further agreed to

promote, and did in fact promote, the unlawful bribery scheme through the transfer of funds from a place within the United States to a place outside the United States.

12. Defendant **MALDONADO**, together with others, including BUSINESSMAN 1, BUSINESSMAN 2, and ASSOCIATE 1, further agreed to take steps, and did in fact take steps, to conceal the unlawful payments by opening a bank account outside of Venezuela for Defendant **MALDONADO** to receive the bribe payments.

### Overt Acts

13. In furtherance of the conspiracy and to achieve the objects thereof, at least one of the co-conspirators committed or caused to be committed, in the Southern District of Texas and elsewhere, at least one of the following overt acts, among others:

14. In or around 2009, ASSOCIATE 1, on behalf of BUSINESSMAN 2, and Defendant **MALDONADO** met in Venezuela during which they reached an agreement that Defendant **MALDONADO** would provide BUSINESSMAN 2 with inside information concerning the PDVSA bidding process and place BUSINESSMAN 2's companies on PDVSA bidding panels in exchange for bribes.

15. In or around 2009, Defendant **MALDONADO** created a private email account so that he could communicate with BUSINESSMAN 2 and ASSOCIATE

1 about the bribery scheme without using his official email account maintained by the PDVSA procurement subsidiary.

16. In or around early 2010, Defendant **MALDONADO**, BUSINESSMAN 1, BUSINESSMAN 2, and ASSOCIATE 1 met at a hotel in Caracas, Venezuela during which they reached an agreement that Defendant **MALDONADO** would place BUSINESSMAN 1's companies on PDVSA bidding panels in exchange for bribes.

17. In or around 2010, ASSOCIATE 1 helped Defendant **MALDONADO** to open a bank account in Panama, in order to receive bribe payments outside Venezuela.

18. In or around 2010, Defendant **MALDONADO** provided ASSOCIATE 1 with the account information to the bank account referenced in Paragraph 17 above so that BUSINESSMAN 1, BUSINESSMAN 2, and ASSOCIATE 1 could send bribes to Defendant **MALDONADO**.

19. On or about April 9, 2010, BUSINESSMAN 1 caused $100,000 to be transferred from a bank account in the United States in the name of a company owned by BUSINESSMAN 1 to Defendant **MALDONADO**'s bank account in Panama.

All in violation of Title 18, United States Code, Section 371.

## Forfeiture Allegation

20. As the result of committing one or more of the offenses charged in Counts 1 of this Information, the defendant, **CHRISTIAN JAVIER MALDONADO BARILLAS**, shall forfeit to the United States, pursuant to Title 18, United States Code, 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of these offenses, and all property traceable to such property.

## Substitute Asset Provision

21. If any of the above-described forfeitable property in Paragraph 20, as a result of any act or omission of Defendant **MALDONADO**,

   a. Cannot be located upon the exercise of due diligence;

   b. Has been transferred or sold to, or deposited with, a third person;

   c. Has been placed beyond the jurisdiction of the Court;

   d. Has been substantially diminished in value; or

   e. Has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of Defendant **MALDONADO** up to the value of the forfeitable property described above.

KENNETH MAGIDSON
UNITED STATES ATTORNEY

ANDREW WEISSMANN
CHIEF, FRAUD SECTION
CRIMINAL DIVISION
DEPARTMENT OF JUSTICE

BY: _____
JOHN P. PEARSON
DEPUTY CHIEF
ROBERT JOHNSON
ASSISTANT UNITED STATES
ATTORNEY

BY: _____
AISLING O'SHEA
JEREMY R. SANDERS
TRIAL ATTORNEYS